UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NICKI LAWSON and MONA ASLIP, as co-administrators of the Estate of Douglas Harless,

Plaintiffs,

v.

LONDON POLICE DEPARTMENT, *et al.*,

Defendants.

No. 6:25-CV-00176-REW-HAI

OPINION & ORDER

*** *** *** ***

## I. Background

This case arises from a tragic loss of life in Laurel County, just before Christmas in 2024. Decedent Douglas Harless died, in his home, when a team of London officers executed a search warrant on Vanzant Road around midnight on December 23, 2024. The warrant, as alleged, was for a location other than the Harless residence. Officers nevertheless executed the warrant at 511 Vanzant, where Mr. Harless alone resided; that location had no evident connection, aside from the road name, to the target site. The officers breached Harless's front door and shot and killed him inside the home. This suit resulted.

Plaintiffs Nicki Lawson and Mona Alsip, individually and as co-administrators of the Estate of Douglas Harless, commenced this action on September 10, 2025, in Laurel Circuit Court, asserting claims against Defendants the City of London, Kentucky; the London Police Department ("LPD"); Jerry Hollon; Andrew Jackson; Ashley Taylor; Elbert Riley; Landry Collett; Troy Truett; Jonathan Jackson; Josh Morgan; and Wesley Wolfe. *See* DE 1-1. Defendants timely removed on October 7, 2025. *See* DE 1.

Before the Court are several pending motions. Defendants, the City of London, Kentucky; the London Police Department; Jerry Hollon; Andrew Jackson; Ashley Taylor; Elbert Riley; Landry Collett; Troy Truett; and Jonathan Jackson move for partial dismissal pursuant to Rule 12(b)(6). *See* DE 3. Defendant Josh Morgan similarly moves for partial dismissal pursuant to Rule 12(b)(6), *see* DE 4, as does Defendant Wesley Wolfe, *see* DE 5. Plaintiffs responded to those motions in a consolidated response. *See* DE 8. Defendants replied. *See* DE 13, 14, 15.

Prior to a ruling on partial dismissal, Plaintiffs moved to file their First Amended Complaint pursuant to Rule 15(a) to: (1) add factual allegations discovered from open records documents produced on April 10, 2026; and (2) add Captain Ryan Jackson as a named Defendant in the suit. *See* DE 20. Each defendant responded in opposition. *See* DE 22, 23, 24. Plaintiffs replied. *See* DE 25, 26, 27.

## II. Analysis

Although the motions to dismiss were filed before Plaintiffs' motion to amend, the Court will address the motion to amend first. *See Rice v. Karsch*, 154 F. App'x 454, 465 (6th Cir. 2005) ("A court should first consider a pending motion to amend before dismissing a complaint."); *see also Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir. 1991) (finding error where motion to dismiss was granted when motion to amend was still pending). Plaintiffs seek to amend their complaint for two primary reasons: (1) to add factual allegations discovered from open records documents produced on April 10, 2026; and (2) to add Captain Ryan Jackson as a named Defendant. *See* DE 20 at 1.

### a. Factual Allegations

After the expiration of the period to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court

should freely give leave when justice so requires." FED. R. CIV. P. 15(a); *accord Foman v. Davis*, 83 S. Ct. 227, 230 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). While the Sixth Circuit has recognized that this "rule embodies a 'liberal amendment policy,'" denial may still "be appropriate when there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002); *Foman*, 83 S. Ct. at 230).

Defendants all oppose the motion to amend on various grounds. Defendants, the City of London, Kentucky; the London Police Department ("LPD"); Jerry Hollon; Andrew Jackson; Ashley Taylor; Elbert Riley; Landry Collett; Troy Truett; and Jonathan Jackson (collectively, "City Defendants") argue that the addition of factual allegations is futile given that Plaintiffs still seek to proceed against a non-suable municipal entity (LPD) and improperly assert concert of action as a standalone cause of action. *See* DE 22 at 1-2, 6-7. Defendants Josh Morgan and Wesley Wolfe similarly argue theories of futility as to the proposed amendments. *See* DE 23, 24. Defendant Morgan, in addition to incorporating the arguments of his co-defendants, argues that the First Amended Complaint does not assert a standalone Fourteenth Amendment claim, that the intentional infliction of emotional distress and negligent infliction of emotional distress claims are impermissible gap fillers, and that the concert of action theory is not viable. *See id*. Defendant Wolfe, by contrast, argues that Plaintiffs "fail to edit and organize their claims and supporting allegations into a manageable format as required by Rule 8" and "even if the proposed amendment complied with Rule 8, it includes no new claims, does not cure existing defects, and would

therefore be futile nonetheless." *See* DE 24 at 3. He further states that "[t]he proposed amendment does nothing to cure the multiple deficiencies which the Defendants have identified in their motions to dismiss, and allowing Plaintiffs to prolong the inevitable dismissal of these deficient claims unduly prejudices the Defendants by requiring unnecessary re-briefing on issues already ripe for dismissal." *See id*. at 3-4.

Relevant here, "[a] court need not grant leave to amend . . . where amendment would be 'futile.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman*, 83 S. Ct. at 230). The Sixth Circuit has previously held that "[a]mendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss" for failure to state a claim under Rule 12(b)(6). *Id.* (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)). In instances where a "proposed amended complaint's allegations demonstrate on their face that that the applicable statute of limitations bars the claims that the amendment asserts," it would be impossible to survive a 12(b)(6) motion and leave to amend may be denied as futile. *Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 500 (6th Cir. 2015) (citing *500 Assocs., Inc. v. Vt. Am. Corp.*, 496 F. App'x 589, 593 (6th Cir. 2012); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations

as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [ ] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986). Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[ ] [them] to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *see El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

The City Defendants argue that LPD, as an arm of the City of London, is not an entity *sui juris* and Plaintiffs' proposed Amended Complaint is futile as to LPD, given its persisting status as a named defendant. *See* DE 22 at 6-7. The Court agrees that, as it relates to LPD, the proposed Amended Complaint is futile because LPD is not a suable entity. The Sixth Circuit has held that "police departments are 'merely sub-units of the municipalities they serve' and therefore are not proper § 1983 defendants." *Sargent v. City of Toledo Police Dep't*, 150 F. App'x 470, 475 (6th Cir. 2005) (quoting *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). This District commonly rejects arguments for § 1983 liability against municipal sub-units, such as police departments. *See Spencer v. Ganshirt*, 2:24-CV-00144-DLB-MAS, 2025 WL 2170114, at *2 (E.D. Ky. July 11, 2025) ("Here, the Court concludes that Spencer's proposed *Monell* claim against the Boone County Sheriff's Department is futile because the Department is not a legal entity capable of being sued under § 1983.") *report and recommendation adopted* 2025 WL 2166424 (E.D. Ky. July 30, 2025); *West v. City of Paris, Ky.*, No. 13–cv–193–JMH, 2015 WL 278142, at *3 (E.D. Ky. 2015) ("The Paris Police Department is a sub-unit or an instrument of the City of Paris and is not *sui juris*, an entity that is capable of

being sued . . . ."); *Smith v. Boyd County Fiscal Court*, No. 20-CV-14-HRW, 2022 WL 992768, at *5 (E.D. Ky. 2022) ("As Defendants point out, the Boyd County Fiscal Court is not an entity *sui juris* – it is merely a subunit or instrument of Boyd County . . . . As such, the claims against it fail as a matter of law . . . ."); *Lowe v. Kentucky Court of Justice*, No. 2:14–168–KKC, 2015 WL 1526106, at * 3 (E.D. Ky. 2015). Accordingly, because LPD is not a legal entity capable of being sued under § 1983, Plaintiffs' proposed amendment is futile as to LPD, and LPD should be dismissed.[1]

Defendant Morgan argues that Plaintiffs' proposed amendment as to their concert of action claim, *see* DE 20-2 at 55, is futile because concert of action is not a standalone cause of action, but rather a method for plaintiffs to bypass the causation requirement in a products liability action. *See* DE 23 at 4. As a general matter, Kentucky law recognizes the tort of civil conspiracy. *Fastenal Co. v. Crawford,* 609 F. Supp.2d 650, 662 (E.D. Ky. 2009) (citing *Montgomery v. Milam,* 910 S.W.2d 237, 239 (Ky. 1995)). "Civil conspiracy" is, under Kentucky law, actually two distinct means of recovering from multiple defendants for an underlying tort. The first is conspiracy, which requires the plaintiff to show that the defendants agreed with another to do an unlawful act and that the plaintiff's damages resulted from an overt act done in furtherance of the conspiracy. *See James v. Wilson,* 95 S.W.3d 875, 897 (Ky. Ct. App. 2002). The second is in the nature of aiding and abetting, which requires the plaintiff to show that the defendant knowingly gave substantial assistance or encouragement to another's commission of a tort. *See Miles Farm Supply, LLC v.*

[1] The Claims Against Local Governments Act ("CALGA") supports this view, regulating recovery against a "local government," a label defined by reference to an incorporated city and "the offices and agencies thereof." KRS 65.200(3). Plaintiffs cite *Morales v. City of Georgetown*, 709 S.W.3d 146 (Ky. 2024) as recognizing a claim against the Georgetown Police Department, but that decision essentially merged the discussion of the City and its sub-agency, described as a "branch" of the named city. The Georgetown Police Department did not have separate status. The Court sees no authority recognizing the London Police as a separate, suable entity.

*Helena Chem. Co.*, 595 F.3d 663, 666 (6th Cir. 2010) (applying Kentucky law); *see also Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. Ct. App. 1988) (adopting Restatement (Second) of Torts § 876, which groups both theories under the label "concert of action"). "In Kentucky, 'civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort.'" *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.,* 515 Fed. Appx. 451, 458-59 (6th Cir. 2013) (quoting *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.,* 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010); *see also Hogan v. Goodrich Corp.,* 2006 WL 149011, at *5 (W.D. Ky. Jan. 17, 2006) ("To support a civil conspiracy claim, some underlying tortious act must be taken.")). Thus, a civil conspiracy claim untethered to a tort "cannot survive as a matter of law." *Stonestreet Farm,* 2010 WL 2696278, at *5. Here, Plaintiffs' concert of action claim is pleaded alongside or accompanying various other traditional torts and is cast as a theory enveloping the other tortious acts. Thus, Plaintiffs have pleaded a plausible claim for relief, and amendment on this ground is not futile.

Defendant Morgan further argues that Plaintiffs' proposed amendments to their IIED and NIED claims are futile because they do not contain separate allegations distinct from the allegations that comprise Plaintiffs' traditional tort claims. *See* DE 23 at 4. Kentucky courts characterize IIED as a gap-filler tort claim, meaning it is available "only where a more traditional tort cannot provide redress for" the emotional distress. *Green v. Floyd Cnty.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011). Federal district courts in Kentucky "bestow NIED claims with the same 'gap-filler' status applied to IIED claims." *Oquendo v. United States*, No. 7:23-CV-40-REW-EBA, 2025 WL 2495771, at *16 (E.D. Ky. Aug. 29, 2025). Under Kentucky law, "where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended

only to cause extreme emotional distress in the victim, the tort of [NIED/IIED] will not lie." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993). This is because "[t]here can be only one recovery for emotional distress on the same acts." *Childers v. Geile*, 367 S.W.3d 576, 583 (Ky. 2012). However, "[t]his is not to say that [NIED/IIED] cannot be pleaded alternatively." *Id.* at 582. On the contrary, plaintiffs may plead these torts in the alternative, but plaintiffs are limited to only "one recovery on a given set of facts." *Id; see also Schuhmann*, 380 F. Supp. at 649 (allowing plaintiffs to plead IIED in the alternative and declining to dismiss that claim); *Clemons v. Couch*, No. 6:17-CV-63-HAI, 2018 WL 11463802, at *1 (E.D. Ky. Jan. 3, 2018) ("Although a plaintiff may not recover under both theories, [she] is not precluded from asserting both theories at the pleading stage." (citing *Action Capital Corp. v. Electro-Motive Diesel, Inc.*, No. 3:10-CV-434, 2011 WL 30766, at *5 (W.D. Ky. Jan. 5, 2011))).

The mere fact that Plaintiffs have alleged both traditional tort claims and NIED/IIED claims is not grounds for dismissal at this early stage. They are free to plead both traditional torts and NIED/IIED in the alternative, but they may not *recover* for both to the extent they rely on the same set of facts or duplicate the basis for damage recovery. Because this is a motion to dismiss and not a motion for summary judgment, "the burden on the plaintiff is only to allege sufficient facts to show [each theory] is a plausible claim for relief." *Clemons*, 2018 WL 11463802, at *1 (alteration in original) (quoting *Holley Performance Prod., Inc. v. Keystone Auto. Operations, Inc.*, No. 1:09-CV-53-TBR, 2009 WL 3613735, at *6 (W.D. Ky. Oct. 29, 2009)). At the pleading stage, such "gap-filler" claims are allowable, and Plaintiffs have pleaded a plausible claim for relief. *See id.*[2]

[2] The Court also wonders about the phrasing of the claims, which seem to address harm to the Plaintiffs themselves rather than to the decedent. *See* DE 20-2 at 53-54. That may or may not be valid legally, but this seems different from the gap-filling role often served by these torts.

Defendant Wolfe's cursory argument that Plaintiffs fail to abide by Rule 8 is similarly meritless. "A pleading that states a claim for relief must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a), (a)(2). And while it is true that "[e]ach allegation must be simple, concise, and direct[,]" Fed. R. Civ. P. 8(d)(1), it follows that "more complicated cases will generally require more pleading[,]" *see Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021). As the Sixth Circuit notes, "[w]hat Rule 8 proscribes is *obfuscation* of the plaintiff's claims." *Kensu*, 5 F.4th at 651 (citing *Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992, 998-99 (2002)). Here, given the defendants named and the claims brought, Plaintiffs' Amended Complaint is of manageable length, clearly states their claims, and sufficiently articulates the bases for those claims. *See* DE 20-2.

Defendants also generally argue that Plaintiffs' proposed amendments are futile on sufficiency grounds. Recognizing the inherent overlap between the futility analysis and the Rule 12(b)(6) standard, courts in this District have often deferred futility determination until after the amended complaint has been filed. *See Summit Locations v. Neal*, No. 5:25-cv-00229-GFVT, 2026 WL 1602725, at *3 (E.D. Ky. June 4, 2026); *Restocon Corp. v. Metro. Knoxville Airport Auth.*, No. 3:23-CV-142, 2023 WL 6614416, at *2 (E.D. Tenn. Aug. 25, 2023) ("Defendant's futility arguments largely track those it raised in its Motion to Dismiss the First Complaint [ ]. Such arguments are more appropriate for resolution after Plaintiff files its First Amended Complaint."); *Bucciarelli v. Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 814 (E.D. Mich. 2009) ("This Court does not read the *Rose* [*v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000)] case as requiring the Court to determine futility before it grants a motion to amend the complaint, but rather as stating that futility is a permissible basis for denying a motion to amend the complaint.").

Here, the proposed Amended Complaint, which offers a more particular and pointed version of the events at issue, seeks to address many of the alleged deficiencies that served as bases for Defendants' motions to dismiss. In their motions to dismiss, Defendants Morgan and Wolfe allege that Plaintiffs failed to state viable claims against them, arguing the Complaint did not identify specific individual actions or culpable conduct. *See* DE 4 at 5; DE 5 at 3-4. Suffice it to say, Plaintiffs put much more detail into the pleading this time. Although Plaintiffs' amendments might prove unavailing, the Court finds it most prudent to refrain from determining the merits of the amended complaint on a fractured record. *See Nichols v. Vill. of Minerva, Ohio*, No. 5:14-cv-613, 2015 WL 845714, at *3 (N.D. Ohio Feb. 25, 2015) (finding that, while it may be true some of plaintiff's claim are futile, "the most efficient way to address these and other issues relating to the sufficiency of plaintiff's allegation is to permit amendment and then allow defendant an opportunity to file a motion to dismiss the [ ] amended complaint if they desire to do so.").

The Court, in its discretion, will follow course and decline to determine futility as a ground for denying leave on sufficiency grounds. That said, although Defendants may yet have dismissal arguments to raise, the Court views the Amended Complaint's allegations as more factually substantial and precise and thus the pleading as less vulnerable. That can be tested by briefing on suitable motion, if apt. And, in any event, no Defendants sought wholesale complaint dismissal, which also cuts against amendment denial.

**b. Addition of Captain Ryan Jackson**

Next, Plaintiffs seek to amend their Complaint by adding Captain Ryan Jackson. Plaintiffs argue that the Amended Complaint adding Captain Ryan Jackson to the claim relates back to the original filing and is thus timely, relative to the 1-year statute that applies to many claims. *See* DE 20 at 9. Further, they allege that because the original Complaint was filed in state court prior to

removal, state law governs application of the relation back doctrine. *See id.* at 9. However, the Sixth Circuit has held that in removal cases, courts should apply the procedural rule of the court where the action is pending at amendment. *See Pacific Emplrs. Ins. Co. v. Sav-A-Lot*, 291 F.3d 392, 400 (6th Cir. 2002) ("As long as the matter remained in the Kentucky court, it was the Kentucky Rules that applied. . . . The Federal Rules applied only after removal[.]"); *see also Seals v. Wal-Mart Stores, L.P.*, No. 7:18-CV-00120-GFVT, 2019 WL 1877290, at *3 (E.D. Ky. Apr. 26, 2019). Here, Plaintiffs seek to amend their complaint after removal to this Court. Thus, Federal Rule of Civil Procedure 15 applies.

An amendment to change a party or naming of a party against whom a claim is asserted relates back to the date of original filing when (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," and (2) "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment . . . received such notice of the action that it will not be prejudiced in defending on the merits[,] and . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c). Generally, this method of amending a pleading is used "to correct a misnomer or misdescription of a proper party . . . already in court." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010). Other than under its rigorous demands, amendment may not be used to "circumvent the statute of limitations, adding new parties and new claims." *Id.*

As relevant here, Rule 15(c)(1) provides, in part, that an amended complaint "relates back to the date of the original pleading" when the added defendant knows or should have known they would have been sued originally but for the plaintiff's "mistake concerning the proper party's [the

defendant's] identity." FED. R. CIV. P. 15(c)(1)(C)(ii). Not knowing "whom to sue is not a misunderstanding and thus is not a mistake for the purposes of Rule 15." *Zakora v. Chrisman*, 44 F.4th 452, 482 (6th Cir. 2022). In *Wright v. Louisville Metro Government*, when the Wrights sued "unknown" officers in their original complaint, they did so because they did not know the proper parties to sue. 144 F.4th 817, 824 (6th Cir. 2025). There, the Sixth Circuit, drawing upon *Zakora*, held that the Wrights' "absence of knowledge" did not amount to a "mistake" that fell within Rule 15's purview. *See id.*; *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties.").

The issue here likely boils down to confusingly similar names and embargoed information. Plaintiff scoured for records but was largely rebuffed (by the City and Kentucky State Police) due to the ongoing criminal investigation. *See* DE 20-7; DE 20-8; DE 20-9; DE 20-10. As such, when Plaintiffs sued, they had secured, e.g., the Computer-Aided Dispatch ("CAD") records from the night and personnel files of purportedly all officers on the scene of the Harless shooting. Plaintiffs cross-referenced these to identify the up to nine officers (Complaint ¶ 95) it believed were on scene, and Plaintiffs sued them all. Later, when all files eventually became available, Plaintiffs learned that Capt. Ryan Jackson was present and the highest-ranking officer. *See* DE 20 at 7. They had not included him in the original complaint.

Instead, the Complaint names two other Jacksons as defendants: Lt. Andrew Jackson and Sgt. Jonathan Jackson. *See* DE 1-1. Jonathan Jackson's full name is Jonathan Ryan Jackson. The later-discovered Captain also is named Ryan Jackson. Plaintiffs had at least seen one reference to Captain Jackson from a related investigation, *see* DE 1-1 at 58, but they did not have information linking him to the scene. The CAD report did not name him, and the attached personnel files do

not include his file. As far as the Court can tell, Plaintiffs "knew there were multiple Jacksons" but were confused by the supervisor known to be on scene. "Due to the similarity of names, Plaintiffs mistakenly identified Sgt. Jonathan Ryan Jackson, as the supervisory Ryan Jackson they intended to hold accountable, when in fact Captain Ryan Jackson is an entirely separate high-ranking Ryan Jackson who was also present at the raid[.]" *See* DE 20 at 13-14. Compounding the problem was that Plaintiffs went to great lengths, as the record details, to get more information; they simply did not have the whole picture when the 1-year statute ran. They thought they had named all officers, supervisory and otherwise, at the Harless residence on the night of the shooting. They were mistaken in that belief.

Plaintiffs allege satisfaction of the mistake requirement given the similarity of names. *See* DE 20 at 13. They note that LPD employs three male officers with the last name "Jackson," all of whom were involved in the December 23, 2024, incident. *See id*. Plaintiffs named Lieutenant Andrew Jackson and Sergeant Jonathan Ryan Jackson in their original complaint but failed to name Captain Ryan Jackson. *See id*.

There is reason to question the mistake description. To begin, the Court notes that Plaintiffs named "Jonathan Jackson"—not "Jonathan Ryan Jackson" or "Ryan Jackson"—in their original complaint. *See* DE 1-1 at 2. Further, Andrew Jackson and Jonathan Jackson are the only two individuals with the last name "Jackson" named in the original complaint. *See id*. If Plaintiffs *knew* and *intended* to sue three individuals named Jackson, which is one reading of the Motion's text, then the presence of only two individuals with that last name on their complaint would surely be a glaring deficiency. These issues cut against the argument that Plaintiffs mistakenly thought that they had "captured both Ryan Jacksons due to the confusingly similar names." *See* DE 20 at 13.

Still, Plaintiffs plainly contend that the name confusion, along with the scant record release, masked an accurate census of all actors on scene. They allege a misconception regarding the supervisors and officers at the location. It is true that "[c]onfusingly similar names can create a mistake." *Rose v. Lake Cumberland Reg'l Hosp., LLC*, No. 6:19-CV-221-CHB-HAI, 2021 WL 7286277, at *8 (E.D. Ky. Sept. 30, 2021). However, "ignorance does not equate to misnomer or misidentification" such as to establish "mistake." *Meiman v. Kenton Cty., Ky.*, No. 2:10-CV-156-DLB, 2011 WL 721478, at *6-7 (E.D. Ky. Feb. 22, 2011); *see also Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 434 (6th Cir. 2013) ("an absence of knowledge is not a 'mistake' as used in Rule 15(c)(1)(C)(ii)").

Moreover, the Sixth Circuit draws a firm line between "a plaintiff's mistake concerning the identity of a party from a plaintiff's mere failure to find out a party's identity." *Ham v. Sterling Emergency Servs. of the Midwest, Inc.*, 575 F. App'x 610, 616–17 (6th Cir. 2014) (citing *Cox*, 75 F.3d at 240). Only the former category satisfies the commands of Rule 15(c)(1)(C). The case is debatable here, but the Court finds reason to permit amendment and to defer analysis of the timeliness of any claim against Captain Ryan Jackson. The fact-intensive nature of the questions counsels a plenary record. *See Carlson v. Hardeman Cnty., Tennessee*, No. 1:18-CV-01213-STA, 2019 WL 2642425, at *7 (W.D. Tenn. June 26, 2019)("Courts commonly resolve this 'patently factual' inquiry at summary judgment armed with a fully developed evidentiary record.").

First, it is plausible that Plaintiffs counted the CAD listings (which allegedly did not properly identify Captain Jackson) and sued every officer reflected as on-site. If the CAD did not reveal Captain Jackson and if the disclosed personnel files did not signify his presence, then Plaintiffs' conclusion—that the Jacksons on site reflected all persons named Jackson to be sued—was reasonable but mistaken. The personnel file response purported to supply the files of all

involved officers. Surely, Plaintiffs were under an erroneous belief or misperception regarding the officer identities, losing one in the shuffle of names and cramped disclosures; these are classic markers of mistake. *See Wyatt v. Owens*, 317 F.R.D. 535, 540 (W.D. Va. 2016) (holding that substituting the correct officer for the officer plaintiff had affirmatively—but mistakenly—identified as the wrongdoer was a mistake of identity, not a lack of knowledge, because plaintiff knew of both officers but confused which one participated in the incident). This was not tactical and it was not ignorance; rather, Plaintiffs analyzed all available information and thought they had sued the whole lot. *See Maccharulo v. Gould*, 643 F. Supp. 2d 587, 596-97 (S.D.N.Y. 2009) (referencing as relevant whether "information concerning the identities of these individuals was uniquely in the possession of the Defendants or that the Defendants failed to cooperate with . . . attempts to obtain this information"). Here, it is evident that only a mistake as to identified participants kept Captain Ryan off the Complaint.

Second, Plaintiffs are correct that the key perspective is whether Captain Ryan should have known he would have been sued but for mistake. He, after all, was the ranking officer on site. He knew (plausibly) that every other officer there was joined in the Complaint. He also surely knew the Complaint allegations given his place in the LPD's hierarchy. A reasonable person would know that a suit naming all involved supervisors and search/seizure participants, save the one at the operation's very top, reflected a mistake about personnel and alleged responsibility. *See Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2488 (2010) ("The question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known Costa Crociere's identity as the proper defendant, but whether Costa Crociere knew or should have known during the Rule 4(m) period that it would have been named as the defendant but for an error."); *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011) (holding, in case with a dizzying array

of entity names, the question is "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant.").

Third, Captain Ryan, as alleged, had direct involvement in information management, including open records responses. He would have known that Plaintiffs were endeavoring to know every name involved in the search and shooting. Further, his absence on the CAD, if proven, would raise questions about records propriety. This would further point toward a mistake on, not ignorance about, the full defendant roster.

And a couple of final points. Captain Ryan is not yet a party. When joined, he can raise whatever defense or motion he thinks the law supports. The Court is unwilling to spare him from joinder based merely on the arguments marshalled by other defendants. Further, and critically, the First Amended Complaint includes torts that carry five-year limitations periods (IIED and trespass to land). *See* KRS § 413.120(4); *see also Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (citing the predecessor to KRS § 413.120(6)). Whatever the contentions against outrage, no one has touched the trespass theory. Relation back would not matter for timely claims, so Captain Ryan would be properly joined as a defendant. The parties can conduct any needed discovery on the timeliness questions and present those at the proper time on a developed record.

The developed record is particularly attractive given potential equitable tolling theories. That doctrine could apply to render timely claims that might otherwise be time-barred. In this case, the Court would not decide on that fact-intensive doctrine in the context of an amendment motion. Plaintiffs' diligence and any events or acts, outside Plaintiffs' control, thwarting a timely claim would all matter. Courts typically reserve a decision on equitable tolling for a post-discovery assessment. *See Billingsley v. Doe #1*, No. 21-6023, 2022 WL 4088511, at *7 (6th Cir. Sept. 7,

2022) ("Absent discovery on whether Plaintiff is entitled to equitably estop Defendants from asserting the statute of limitations as a defense, it is premature to dismiss Plaintiff's civil rights suit.").

As to these later arguments, Plaintiffs seek application of equitable tolling and equitable estoppel. On the equitable tolling argument, Plaintiffs claim that they were unable to name Captain Ryan Jackson within the prevalent statutory limitations period because they were denied access to crucial documents during the Kentucky State Police investigation 15-month period, and Captain Jackson did not identify himself on the CAD report. *See* DE 20 at 17-18. In the alternative, Plaintiffs seek application of equitable estoppel,[3] arguing that Captain Jackson deliberately concealed his identity when "on the date of the search, he did not report that he was conducting the search in the CAD system, even though he had a duty to do so, when he failed to return the search warrant and affidavit after execution, and when he failed to complete required reports under the London Police Department Policies, and produce the [sic] pursuant to the Kentucky Open Records act." *See* DE 20 at 19-20.

In Kentucky, "[a] person who knows he has been injured has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints." *Combs v. Albert Kahn Assocs., Inc.*, 183 S.W.3d 190, 199 (Ky. Ct. App. 2006). But, in certain circumstances, Kentucky law does provide for equitable tolling. In § 1983 actions, the law of the state where the federal court sits applies unless the state law is "inconsistent with [the] federal policy underlying section

[3] Plaintiffs technically couch their argument as "fraudulent concealment" pursuant to KRS 413.190(2). *See* DE 20 at 18-19. However, the tolling statute is merely "a codification of equitable estoppel principles[.]" *500 Assocs., Inc.*, 496 F. App'x at 595; *see also Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573 (Ky. 2009) (KRS 413.090(2) "is essentially a recognition in law of an equitable estoppel or estoppel in pais to prevent a fraudulent or inequitable resort to a plea of limitations."). Whether styled as fraudulent concealment or equitable estoppel, the theory is ultimately the same. *See Bridgeport Music Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) ("Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time.").

1983." *See Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (citing *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 100 S. Ct. 1790 (1980)); *see also Wallace v. Kato*, 127 S. Ct. 1091, 1098 (2007) ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitation."). Kentucky's tolling laws are consistent with the federal policy underlying § 1983, *see 4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 820 (E.D. Ky. 2019), and therefore apply here to Plaintiffs' § 1983 claims (and, perforce, the Kentucky law claims).

"[T]he doctrine of equitable tolling is used sparingly by federal courts." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). The doctrine "pauses a limitations period and does not require any wrongdoing, but rather applies when a plaintiff, 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.'" *Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020) (quoting *Chung v. U.S. Dept. of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003)). In other words, "[e]quitable tolling pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Id.* (quoting *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014)) (internal quotation marks omitted). Thus, to succeed on an equitable tolling argument, Plaintiffs bear the burden of showing that (1) they "ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstances stood in [their] way." *Id.* at 194 (quoting *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005)). "The decision to invoke equitable tolling is a question of law for a court to answer." *See Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 370 (6th Cir. 2024) (citation omitted), *cert. denied sub nom., Wershe v. City of Detroit*, 145 S. Ct. 1128 (2025).

Plaintiffs argue that "[t]he withholding of public records beyond the statute of limitations, along with Captain Ryan Jackson's act of not reporting himself on the CAD report, plus the

confusingly similar names, constitute extraordinary circumstances that would justify equitable tolling." *See* DE 20 at 18. Indeed, Plaintiffs explicitly state that "[b]ased on the severely limited information available during the limitations period . . . Plaintiffs identified a high-ranking 'Ryan Jackson' on scene, concluded that Jonathan Ryan Jackson and Ryan Jackson were the same person, and sued him." *See id.* The record is not sufficient to test this theory; the Court will await discovery to sort equitable tolling.

Same result for estoppel, a weaker gambit at this point. The doctrine of equitable estoppel only applies when the opposing party engaged in "conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert." *Williams*, 594 S.W.3d at 196 (quoting *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010)). Once again, Plaintiffs bear the burden of making this showing. *See Michigan Exp., Inc. v. United* States, 374 F.3d 424, 427 (6th Cir. 2004). This is a high bar. Captain Ryan's informational roles has pertinence, but the taxing standard requires inducement along with reasonable reliance. The fact-bound nature of the inquiry counsels for deferral until Captain Ryan is before the Court and discovery on the key timeliness issues has occurred.

## III. **Conclusion**

The Court retains discretion to partially grant motions for leave to amend. *See Mueller v. FacilityONE Techs., LLC*, No. 3:21-CV-759-DJH-CHL, 2023 WL 3193284, at *7 (W.D. Ky. Mar. 22, 2023); *see also Kareem v. J.P. Morgan Chase Bank, N.A.*, No. 2:14-CV-252, 2015 WL 12698033, at *9 n.8 (S.D. Ohio Jan. 28, 2015). The Court **GRANTS** in part and **DENIES** in part DE 20. The Court rejects the London Police Department as a separate defendant. In all other

respects, the Court **GRANTS** DE 20. Plaintiffs shall file a First Amended Complaint in the same form as tendered but eliminating LPD as a defendant.

Granting a motion to amend renders a pending motion to dismiss moot. *See Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) ("The general rule is that filing an amended complaint moots pending motions to dismiss." (citations omitted)); *see also* 6 Wright & Miller, Federal Practice and Procedure § 1476 (3d ed. 2010) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading."). Accordingly, the Court **DENIES** without prejudice DEs 3, 4, and 5 as moot.

Within **seven (7) days** of entry of this Order, Plaintiffs **SHALL FILE** a corrected amended complaint that reflects the Court's ruling herein.

The Court intends for the case to be put on a schedule and for discovery to commence, **irrespective** of any motion(s) to dismiss the Amended Complaint. Accordingly, the Court, per DE 2, **REFERS** the matter to United States Magistrate Judge Hanly A. Ingram to set a realistic schedule. Discovery may commence when and on the schedule he promptly sets.

This the 17th day of September, 2026.

**Signed By:**
***Robert E. Wier*** REW
**United States District Judge**